RECEIVED
IN LAKE CHARLES, LA
APR - 8 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| RICKY D. SIMON | CIVIL ACTION NO. 08-0288<br>SEC. P |
| VS. | JUDGE TRIMBLE |
| CALCASIEU PARISH SHERIFFS<br>OFFICE, ET AL | MAGISTRATE JUDGE KAY |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Ricky D. Simon, proceeding *in forma pauperis*, filed the instant civil rights complaint on February 27, 2008 alleging a cause of action pursuant to 42 U.S.C. § 1983. Plaintiff is incarcerated at the Calcasieu Correctional Center (CCC) in Lake Charles, Louisiana. He prays for damages (1) for injuries sustained in an automobile accident, (2) for inadequate medical care during the period he has remained incarcerated, and (3) for the loss of personal property. In subsequent pleadings he requested immediate medical attention, a speedy trial on the pending state charges, and the prosecution of the District Attorney for "criminal neglect." In these various pleadings he has named the following defendants: (1) the Calcasieu Parish Sheriffs Office (CPSO); (2) the unknown off-duty CPSO deputy who collided with him on September 22, 2007; (3) the Iowa, Louisiana Police Department (IPD); (4) IPD Detective Jason, (5) Officer Willie, (6) Chief Vincent, (7) Michael P. Ned,[1] and (8) District Attorney John Derosier.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the complaints and associated pleadings and

---

[1] Plaintiff incorrectly spells this defendant's name "Nedd." This court knows Mr. Ned to be an attorney employed by the Calcasieu Parish Public Defender's Office and believes he was so employed at the time of these allegations.

1

motions be DENIED AND DISMISSED WITH PREJUDICE as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

*Statement of the Case*

Plaintiff has filed a series of pleadings setting forth various complaints against various defendants. Read liberally, these various complaints, letters, and motions allege the following

### 1. Original Complaint (Doc. 1)

On September 22, 2007, plaintiff had an altercation with his neighbor. Police were summoned and when they arrived plaintiff fled in his grandmother's automobile. An off-duty CPSO Deputy collided with plaintiff at the intersection of U.S. Highway 90 and Bowers Street in Iowa, Louisiana. Plaintiff sustained a broken leg and injuries to his left shoulder, neck, and hand. He was transported to the Lake Charles Memorial Hospital emergency room for examination and treatment.

According to plaintiff, the Calcasieu Parish medical community refused to treat him appropriately because, for reasons not stated, they are in fear of the CPSO. As of late February 2008, when the original complaint was filed, plaintiff claimed that he still could not walk or use his left arm. Plaintiff also complained of dizziness upon standing.

Plaintiff prayed "to see a physician that is not afraid to administer treatment" and for an unspecified amount of compensatory damages for the injuries inflicted by the off-duty deputy.

### 2. First Amended Complaint (Doc. 4)

On March 19, 2008, plaintiff amended his complaint. He alleged that upon his release from the Lake Charles Memorial Hospital he was transported to the CCC. While he was still at the hospital, plaintiff surrendered items of personal property - his driver's license, social security

2

card, library card, Louisiana Purchase Card, various keys, a rented laptop computer, and blue jeans. Plaintiff executed a form directing that the property be released to his grandmother. However, when his grandmother arrived at CCC to get the items, she was told that the property could not be found.

In this amended complaint plaintiff joined IPD Chief Vincent, Detective Jason, and Officer Willie, the officer who arrested him, however, the complaint did not request a remedy.

### 3. Motion for Medical Attention (Doc. 8)

On April 7, 2008, plaintiff submitted a letter to the court which was construed as a "Motion for Medical Attention" since it requested "permission to see a doctor that is not influenced or manipulated by Calcasieu Correctional Center for my left shoulder and neck, not to mention my right leg . . . ." Plaintiff asserted that he was still experiencing difficulties and that he has been refused medical attention. Plaintiff included copies of Inmate Grievance Forms and the responses of CCC administration.[2]

---

[2] In a grievance dated February 27, 2008, plaintiff complained that he had received inadequate medical care, however, he conceded that since the September 2007 accident he received a "soft cast" from Lake Charles Memorial Hospital, a knee brace from Baton Rouge, and an M.R.I. examination of his shoulder. He complained, however, that no physician placed hands on him or spoke to him about his condition. Plaintiff complained that he passed out on February 19, 2008, but acknowledged that he was transported via ambulance to the hospital. He continued to complain about numbness in his leg and hand and cramps in his neck and left shoulder. He concluded by requesting to "see a doctor who is not scared to give medical treatment . . . ." This grievance was rejected because plaintiff failed to include the date he filed the grievance. Doc. 8, at 2.

In a grievance dated March 3, 2008, petitioner again complained of the lack of treatment stating, "I have received no medical treatment, the Doctors only took my casts, knee brace, wheel chair and crutches and gave me an appointment . . . ." According to plaintiff, he still could not walk because his knee filled up with fluid. He also complained of dizziness, cramps, numbness and pain. He requested "to see a doctor who is not scared to give treatment." On the same date the Assistant Warden responded, "Spoke with medical, you were seen on 2/12/08 sent to the emergency room via ambulance on 2/19/08 and scheduled appointment on 2/28/08. Not clear what type of solution you are requesting." Doc. 8, at 3.

In a grievance dated March 12, 2008, he complained, "The medical facility I have been traveling to in Baton Rouge is not . . . giving me relief of my medical problems. I am requesting a doctor or a medical facility that will do something besides give another appointment and not do anything to help my right leg and shoulder. These people . . . . seeing me are not doing anything and have not done anything for me or my injuries." In a reply dated March 27, 2008, the Assistant Warden noted, "According to the medical department the doctor has stated your condition has shown improvement and you are to return in 6 months." Doc. 8, at 4.

3

On April 27, 2008, the undersigned denied plaintiff's motion based on the exhibits he tendered which implied that plaintiff, by his own admission, was receiving appropriate medical care. Doc. 9.

### 4. Letter Response (Doc. 10)

On May 2, 2008, plaintiff submitted another letter to the court alleging that the CCC medical reports were incorrect and would be proven incorrect once plaintiff is examined by a physician at a "reliable medical practice."

### 5. Memorandum Order (Doc. 11)

On May 28, 2008 the undersigned completed an initial review, instructed plaintiff on the applicable law,[3] and directed him to amend his complaints to provide specific information. Plaintiff was directed, in general, to provide (1) the name of each person who allegedly violated his constitutional rights; (2) a description of what actually occurred and what each defendant did to violate his rights; (3) the place and date that each event occurred; and (4) a description of the alleged injury.

With regard to his medical care claims, plaintiff was specifically directed to provide (1) a description of all medical care given to him for the injuries that he is alleging as a result of this incident; (2) the dates of such treatment and the name of the person giving the treatment; and, (3) whether plaintiff received any diagnosis from any doctor or otherwise as a result of the injuries that he is alleging as a result of this incident.

---

In an Inmate Request for Medical Services dated February 24, 2008 plaintiff complained of pain in his left shoulder, numbness in his hands and feet, problems lifting his left arm, cramps in his shoulder and neck and dizziness. On the same date the medical department responded, "You have an ortho[pedic] appointment in the near future." Doc. 8, at 5.

[3] Plaintiff was instructed that in order to prevail on his medical care claims, he would have to establish "deliberate indifference" on the part of the defendants and that term was fully defined for him. He was advised that his lost property claim was subject to dismissal under the Parratt/Hudson doctrine, and that area of law was also defined for him; and, he was advised that his claims against supervisory personnel were subject to dismissal unless he could demonstrate personal involvement on their part.

4

Plaintiff did not amend his complaint as ordered and therefore, on July 25, 2008, he was advised that his failure to comply with the May 28, 2008 Memorandum Order would result in the dismissal of his complaints. Doc. 12.

### *6. Second Amended Complaint (Doc. 13)*

On July 30, 2008, plaintiff amended his complaint. Therein for the first time plaintiff alleged that following his release from the Lake Charles Memorial Hospital he was incarcerated in the "whole" at CCC and not provided the pain medication which had been prescribed. Plaintiff alleged that he complained for three days before he was examined by a nurse who gave him Motrin®[4] but not the drug which had been prescribed. Plaintiff, however, did not allege or describe the medication which had been prescribed by the physicians at Lake Charles Memorial Hospital. Plaintiff concluded by complaining that the CCC does not employ a "license Doctor" and that he was in pain for 15 days because he was not provided the prescribed pain medication.

### *7. Motion for Medical (Doc. 14)*

On August 4, 2008, plaintiff submitted a pleading styled "Motion for Medical." Therein he alleged, "After having my cast removed and a MRI done on my left shoulder and neck, I have not received therapy or a return doctor visit as ordered by the physician at the hospital. I am still having severe headaches and cramps in shoulder and back of my neck. My knee hurts when I stand and put pressure on my right knee. Blank periods in vision." Plaintiff then prayed for "medical assistance."

---

[4] Prescription Motrin ® or ibuprofen, is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints) and rheumatoid arthritis (arthritis caused by swelling of the lining of the joints). It is also used to relieve mild to moderate pain, including menstrual pain (pain that happens before or during a menstrual period). Nonprescription Motrin or ibuprofen is used to reduce fever and to relieve mild pain from headaches, muscle aches, arthritis, menstrual periods, the common cold, toothaches, and backaches. Motrin is in a class of medications called NSAIDs (non-steroidal anti-inflammatory drugs). It works by stopping the body's production of a substance that causes pain, fever, and inflammation. Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs & Supplements, at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682159.html

On August 15, 2008 the undersigned again denied relief. Doc. 15.

### *8. Third Amended Complaint (Doc. 16)*

On October 17, 2008, plaintiff submitted a third amended complaint naming Michael P. Ned and District Attorney John F. Derosier as defendants. Plaintiff complained that upon his arrest he informed the District Attorney's Office that he was the caretaker of his ailing elderly grandmother. He claimed that because the District Attorney failed to provide a speedy trial and grant a motion to quash, he was unable to take care of his grandmother and she died. Plaintiff prayed to "bring my case to trial" and to "charge these people with criminal neglect to my grandmother . . . ." Plaintiff makes no claim against Mr. Ned[5] nor does he state how Mr. Ned contributed to this aspect of his complaint.

### *9. Summary of Plaintiff's Complaints*

Construed liberally, plaintiff's various complaints, amended complaints, motions and letters allege the following claims for relief against the following defendants:

1. **Personal Injury** - A claim for compensatory damages against the still unidentified CPSO Deputy who collided with plaintiff and who, plaintiff claims, is responsible for his injuries. Doc. 1;

2. **Medical Care** - An implied claim for injunctive relief in the form of an order allowing plaintiff to see a physician who "is not afraid to administer treatment" [doc. 1] or who "is not influenced or manipulated by Calcasieu Correctional Center" [doc. 8]; a request for "medical assistance" [doc. 14]; and an implied claim for damages based on the denial of prescribed medication by a still unidentified nurse on the CCC medical staff [doc. 13];

3. **Loss of Property** - An implied claim for compensatory damages for loss of personal property against IPD Chief Vincent, Detective Jason, and Officer Willie [doc. 4];

---

[5] See n.1, *supra*, regarding the identity of Mr. Ned.

4. **Speedy Trial and Prosecution of the District Attorney** - A prayer for enforcement of plaintiff's speedy trial right and for the prosecution of the District Attorney on charges of "criminal neglect." [doc. 16].

*Law and Analysis*

*1. Screening*

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without service of process if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990). A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see Denton v. Hernandez*, 504 U.S. 25, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

District courts must construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under § 1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). A district court is bound by the allegations in a plaintiff's

complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias,* 23 F.3d at 97.

Plaintiff's complaint and his amended complaints outline the broad contours of his claims for relief. He was instructed on the applicable law and ordered to amend his complaints to provide specific information. This matter has been pending for over a year and plaintiff has been given the opportunity to amend his complaints to state a claim. He has pleaded his best case and need not be afforded further opportunities to amend.

## 2. *Personal Injury Claims*

In his original complaint, plaintiff implied that he was entitled to compensatory damages from the still unidentified CPSO Deputy who collided with him on September 22, 2007. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). The deprivation must be intentional; negligent conduct cannot serve as the basis for a § 1983 claim. *See Jackson v. Procunier,* 789 F.2d 307, 310 (5th Cir. 1986).

Plaintiff's complaint implies that he was the victim of negligence on the part of the unidentified deputy sheriff. To the extent that plaintiff seeks redress on the basis of the defendant's negligence, he has failed to state a claim for which relief may be granted.

Plaintiff has never alleged that the deputy intentionally injured him. However, even if the deputy intentionally collided with the automobile that plaintiff was driving, it appears from the facts thus far alleged that the officer was entitled to use such force as plaintiff was evading capture. To prevail on excessive force claims, plaintiff must ultimately prove that the officer's

use of force was objectively unreasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 395-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). In other words, the unidentified officer's use of force may have been justified if he had "probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985).

Plaintiff was instructed to provide more detail with respect to this claim. He failed to do so. Plaintiff failed to give any facts that would suggest that this incident was more than an accident and he certainly alleged no particular facts that could support a claim that the force used to apprehend him was unreasonable. Therefore, it is recommended that plaintiff's claim for compensatory damages arising out of the September 22, 2007 collision be dismissed for failure to state a claim for which relief may be granted.

### 3. Medical Care Claims

It appears that plaintiff was a pretrial detainee when his medical care claims arose. The constitutional right of a pretrial detainee to medical care is based upon the due process guarantee of the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). That right is violated only if the defendants act with deliberate indifference to a substantial risk of serious medical harm which results in injury. *Id.* This is the same standard applicable to convicted prisoners whose claims are analyzed under the Eighth Amendment. "[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). Thus, in the present case, plaintiff can establish an actionable constitutional violation only if he alleges facts tending to establish that the defendants were deliberately indifferent to his serious medical needs. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

Deliberate indifference in the context of the failure to provide reasonable medical care means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' responses indicated that they subjectively intended that harm occur. *Id.* at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Tex. Dept. of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059,1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530,534 (5th Cir. 1999).

The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *See Norton v. Dimazana*, 122 F.3d 286,292 (5th Cir. 1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather v. Foti*, 958 F.2d. 91 (5th Cir. 1992); *Varnado v. Lynaugh*, 920 F.2d 320,321 (5th Cir. 1992). In *Woodall v. Foti*, 648 F.2d. 268,272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *Woodall*, 648 F.2d at 272; *Mayweather*, 958 F.2d 91. Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an

alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321; *see also Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather*, 958 F.2d 91.

Plaintiff was instructed on deliberate indifference and directed to amend his complaint to state a claim for relief. Plaintiff's various complaints, motions, and exhibits do not establish deliberate indifference on the part of any particular defendant.

Further, even if plaintiff were afforded yet another opportunity to amend his complaint, it does not seem likely that he would be able to state a claim for relief against any particular defendant. Plaintiff's various submissions suggest that he was in fact examined and treated by physicians in the wake of his accident.[6] Nevertheless, plaintiff implies that he was and continues to be dissatisfied with the medical care afforded by these physicians because he has concluded that they were fearful (for reasons not fully explained) of the Calcasieu Parish Sheriffs Department.

With respect to the medical care he has received at CCC, he conceded that when he "passed out" in February, 2008, he was transported to a hospital by ambulance where he apparently received some medical treatment. Further, in a grievance filed in March 2008 he conceded that he was being transported to and from a medical facility in Baton Rouge. The various responses to his grievances imply that plaintiff was afforded treatment by orthopedic specialists and that these physicians concluded that plaintiff was responding to treatment. Doc.

---

[6] In the inmate grievances submitted by plaintiff he conceded that he was examined and treated by a physician at Lake Charles Memorial Hospital in Lake Charles; that this physician provided a "soft cast"; that he was examined at a medical facility in Baton Rouge and was provided a knee brace; and, that he was afforded an MRI examination at some unspecified medical facility. His pleadings also establish that he was offered Motrin for pain by the CCC medical department.

11

8, at 3-5. Finally, with respect to his claim that he was denied medication, by his own admission, he was offered Motrin when he complained of pain.

At worst, plaintiff has alleged a disagreement with his diagnosis and treatment. He has not shown deliberate indifference on the part of any particular defendant and therefore his medical care claims should be dismissed as frivolous.

### 4. The Parratt/Hudson Doctrine

Plaintiff claims that various items of personal property were lost or stolen when he was transferred from the Lake Charles Memorial Hospital to the CCC. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States" *West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). Plaintiff's claim implicates the due process clause of the Fourteenth Amendment which provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." United States Constitution, Amendment XIV. Here, plaintiff implies that he was deprived of property – his driver's license, library card, keys, a computer, blue jeans, etc. - by "state actors" (the Chief and Officers of the Iowa Police Department) without due process.

A claim for random deprivation of personal property is not cognizable under §1983. In *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post deprivation tort remedy provided all the process that was due. *Id.* at 536-37, 101 S. Ct. at 1913, 68 L. Ed. 2d 420.

The Due Process Clause does not embrace tort law concepts. Although a litigant may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford such a remedy. *Daniels v. Williams*, 474 U.S. 327, 335, 106 S. Ct. 662, 667, 88 L. Ed. 2d 662 (1986). Even in instances where intentional deprivation occurs, as implied herein, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated, so long as the deprivation was "random." *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994).

This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375 (citing *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S. Ct. 975, 985-86, 1098 L. Ed. 2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State)).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, demonstrate that a random and unauthorized deprivation occurred when plaintiff's property was confiscated and then either lost or stolen. Since plaintiff's loss was the result of a random and unauthorized deprivation, he is not entitled to relief pursuant to §1983 if adequate state law remedies are available.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence or for the intentional torts committed by the defendants. *See* La. Civil Code art. 2315. This provision of state law, which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet*

13

*v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S. Ct. 2994, 120 L. Ed. 2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine. Plaintiff's loss of property claim lacks an arguable basis in law and therefore this claim should also be dismissed as frivolous.

### 5. *Criminal Charges*

Plaintiff also implies that he is entitled to press criminal charges against the District Attorney and others because allegedly their delays in bringing him to justice resulted in the death of his grandmother. Such a claim is without a basis in law or fact. In any event, federal courts do not investigate or institute criminal prosecutions. Indeed, the ultimate decision whether to prosecute or file criminal charges against any individual lies within the discretion of the executive branch and private citizens do not have a constitutional right to have any individual criminally prosecuted. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Plaintiff has again failed to state a claim for which relief may be granted and dismissal on that basis is recommended.

### 6. *Pre-trial Habeas Corpus*

Finally, plaintiff asks this Court to enforce his right to a speedy trial on the charges pending in Calcasieu Parish. It thus appears that plaintiffs final claim challenges the fact or duration of his confinement. The Supreme Court has long held that a prisoner in state custody cannot use a §1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 14 489,93 S. Ct. 1827,36 L. Ed. 2d 439 (1973); *see also Wolff v.*

*McDonnell,* 418 U.S. 539,554,94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); *Heck v. Humphrey,* 512 U.S. 477,481, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); *Edwards v. Balisok,* 520 U.S. 641,648, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997).

To the extent that plaintiff attacks the fact of his incarceration and seeks enforcement of his speedy trial rights, he fails to state a claim for which relief may be granted pursuant to 42 U.S.C. § 1983.

His proper remedy is a petition for *habeas corpus* relief filed pursuant to the provisions of 28 U.S.C. § 2241. *Dickerson v. Louisiana,* 816 F.2d 220, 224 (5th Cir. 1987), *cert. denied,* 484 U.S. 956,108 S. Ct. 352,98 L. Ed. 2d 378 (1987). Since *pro se* pleadings must be liberally construed (*Haines v. Kerner,* 404 U.S. 519, 520,92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)), the undersigned may construe this aspect of plaintiffs third amended complaint as a petition for writ of *habeas corpus.*

This does not end our inquiry, however, because state prisoners are not entitled to seek federal *habeas corpus* relief - whether pursuant to 28 U.S.C. § 2241 or § 2254 - until such time as they have exhausted available state court remedies. *See Preiser,* 411 U.S. at 491, 93 S. Ct. at 1837, 36 L. Ed. 2d 439; *see also Dickerson,* 816 F.2d at 224. The requirement of exhaustion of state court remedies is well established. A petitioner seeking federal *habeas corpus* relief cannot collaterally attack his state court conviction or his pre-trial detention by the state in federal court until he has exhausted available state remedies. *Rose v. Lundy,* 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed.2d 379 (1982); *Minor v. Lucas,* 697 F.2d 697 (5th Cir. 1983). The exhaustion requirement is a judicial abstention policy developed "to protect the state courts' opportunity to confront and resolve initially any constitutional issues arising within their jurisdictions as well as to limit federal interference in the state adjudicatory process." *Dickerson,* 816 F.2d at 225;

*Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971); *Shute v. Texas*, 117 F.3d 233 (5th Cir. 1997).

In order to satisfy the exhaustion requirement, the petitioner must have provided all state courts that could review the matter with a fair opportunity to review all of his *habeas corpus* claims before a federal court will review those claims. *Anderson v. Harless*, 459 U.S. 4, 103 S. Ct. 277, 74 L. Ed. 2d 3 (1982); *Picard*, 404 U.S. 270, 92 S. Ct. 509, 30 L. Ed. 2d 438.

With regard to *habeas* petitions filed under 28 U.S.C. § 2241 by pre-trial detainees, while there is no express statutory requirement that the detainee exhaust state court remedies prior to asserting his claims in federal court, nevertheless, jurisprudence requires such persons seeking relief pursuant to § 2241 to first exhaust state court remedies before seeking federal intervention. *Dickerson*, 816 F.2d at 224-25.

Exhaustion in this context means that a federal litigant must fairly present his constitutional claims to the highest state court in a procedurally correct manner before he can raise those claims in federal court. *Ries v. Quarterman*, 522 F.3d 517 (5th Cir. 2008). Plaintiff implies that he is being held in violation of his right to a speedy trial as guaranteed by the United States Constitution; however, it is clear that he has not fairly presented this claim to the Louisiana Supreme Court.[7] His claim therefore remains unexhausted and federal review of the claim at this time is inappropriate.

Plaintiff's "speedy trial" claim fails to state a claim for which relief may be granted pursuant to 42 U.S.C. § 1983. To the extent that his claim may be liberally construed as a

---

[7] Plaintiff filed an application for writs in Louisiana's Supreme Court arguing that "the district court has failed to act on a motion for a speedy trial and a motion to quash." The Supreme Court ordered the district court to act on those motions and to provide a copy of its judgment. *State ex rel. Ricky D. Simon v. State*, 989 So.2d 86 (La. 2008). If, on remand, plaintiff is dissatisfied with the District Court's disposition of his motion, plaintiff must seek review of that disposition in the appropriate court of appeal and thereafter in the Louisiana Supreme Court in order to properly exhaust those remedies. Nothing presented with plaintiff's complaints indicates these measures have been taken.

petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241, it is subject to dismissal because plaintiff failed to fully exhaust state court remedies prior to raising his claim in federal court.

*6. Conclusion*

IT IS RECOMMENDED that plaintiff's civil rights complaints be DISMISSED WITH PREJUDICE as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii);

IT IS FURTHER RECOMMENDED that plaintiff's complaint, insofar as it seeks enforcement of plaintiff's constitutional right to a speedy trial, be DISMISSED WITHOUT PREJUDICE because plaintiff failed to exhaust available state court remedies prior to filing his claim in federal court.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Lake Charles, Louisiana, _____, 2009.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE